## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Case No. 1:13-cv-2415

WILLIAM EVANS; and
JEFFREY THAYER

      Plaintiffs,

v.

LOVELAND AUTOMOTIVE INVESTMENTS, INC;
JOHN RICHARD PIPE D.B.A. LOVELAND AUTO TRANSPORT; and
PIPELINE AUTO TRANSPORT, INC.

      Defendants.

---

# PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

---

COMES NOW, the Plaintiffs with following motion for summary judgment against all

Defendants for their Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*); Colorado Wage Claim

Act (C.R.S. § 8-4-101 *et seq.*); and Colorado Bounced Check Statute (C.R.S. § 13-21-109)

claims.

## I.  INTRODUCTION

The Plaintiffs worked as employees for Defendant Pipe or one of his entities driving

tractor trailers that transported cars and trucks throughout the West, frequently traveling to and

from Texas from the Defendants' Colorado location. The Plaintiffs were to be paid for each trip

they completed. During the Plaintiff's employment, wages were illegally withheld from each

paycheck and held in an "escrow" to pay for any damage that occurred to the vehicles the

Plaintiffs transported. At the end of their employment, the Plaintiffs were still owed pay for their

final trips as well as the money illegally withheld from their pay and put in escrow. It is

undisputed that the final payments were withheld and it is undisputed that some of Plaintiffs' pay was withheld from each paycheck and never given to the Plaintiffs. In fact, the Defendants provided accountings detailing this fact and the exact amounts owed to the Plaintiffs. As a result, the Plaintiffs are entitled to summary judgment against all Defendants as detailed below.

## II.  MOVANTS' STATEMENT OF MATERIAL FACTS

1.      Plaintiffs Williams Evans and Jeffrey Thayer entered into employment contracts with or through Defendant Pipe (hereinafter collectively referred to as the "contract", "contracts", "employment contract", and "employment contracts"). Ex. A ¶ 2; Ex. B ¶ 2.

2.      In entering into the employment contracts, Defendant Pipe was acting personally through his trade name, Loveland Auto Transport, and/or as agent for one or both of his entities, Defendant Loveland Automotive Investments, Inc. and Defendant Pipeline Auto Transport, Inc. Ex. A ¶ 3; Ex. B ¶ 3.

3.      It was never clear to Mr. Evans and Mr. Thayer which Defendant or combination of Defendants employed them because they received checks and other documents indicating that all of the Defendants were their employers. Ex. A ¶ 4; Ex. B ¶ 4.

4.      Under the employment contracts, Mr. Evans and Mr. Thayer transported automobiles to and from Colorado across state lines, frequently traveling to Texas. Ex. A ¶ 5; Ex. B ¶ 5.

5.      During the employment contract, Mr. Evans and Mr. Thayer had no other driving jobs. Ex. A ¶ 6; Ex. B ¶ 6.

6.      Defendant Pipe hired Mr. Evans and Mr. Thayer, fired them, maintained their employment records, paid them, and controlled how and how much they were paid. Ex. A ¶ 7; Ex. B ¶ 7.

7.      Defendant Pipe also controlled the work of Mr. Evans and Mr. Thayer by telling them when, where, and how to pick up automobiles, where to take them, and always supplying a truck for them to drive. Ex. A ¶ 8; Ex. B ¶ 8.

8.      Under the employment contracts, Mr. Evans and Mr. Thayer were paid separately for each trip they completed transporting automobiles. Ex. A ¶ 9; Ex. B ¶ 9.

9.      During the course of the employment contracts, $100 was withheld from each trip's pay. Ex. A ¶ 10; Ex. B ¶ 10.

10.     Defendant Pipe told Mr. Evans and Mr. Thayer that the withheld amounts were put in "escrow" to cover any damage Mr. Evans and Mr. Thayer caused to the automobiles they were transporting. Ex. A ¶ 11; Ex. B ¶ 11.

11.     During the course of Mr. Evans' employment contract, a total of $4,400 was withheld from his pay and put into this damage "escrow." Ex. A ¶ 12.

12.     During the course of Mr. Thayer's employment contract, a total of $2,800 was withheld from his pay and put into this damage "escrow." Ex. B ¶ 12.

13.     Mr. Evans' employment contract terminated sometime between March 1, 2013 and March 6, 2013. Ex. A ¶ 13.

14.     Mr. Thayer's employment contract terminated sometime in June 2012. Ex. B ¶ 13.

15.     Upon termination, Mr. Evans was owed wages for two trips – $1243.75 for one trip and $1605 for the other trip – and the $4,400 in wages withheld from his pay and held in the damage "escrow." Ex. A ¶ 14; Ex. 1 to Ex. A.

16.     Therefore, the total amount of unpaid wages owed to Mr. Evans at termination was $7,248.75 and he is still owed these wages. Ex. A ¶ 15.

17.     Upon termination, Mr. Thayer was owed $1827.50 for his last trip and the $2,800 in wages withheld from his pay and held in the damage "escrow." Ex. B ¶ 14; Ex. 1 to Ex. B.

18.     Therefore, the total amount of unpaid wages owed to Mr. Thayer at termination was $4,627.50 and he is still owed these wages. Ex. B ¶ 15.

19.     Mr. Evans worked at least 100 hours on his two unpaid trips and was never paid for these hours. Ex. A ¶ 16.

20.     Mr. Thayer worked at least 70 hours on his unpaid trip and was never paid for these hours. Ex. B ¶ 16.

21.     On April 3, 2013, Mr. Evans, through counsel, sent a wage demand letter to Mr. Pipe and Pipeline Auto Transports, Inc. pursuant to C.R.S. § 8-4-109. Ex. A ¶ 17; Ex. 2 to Ex. A (Demand Letter).

22.     Mr. Evans has not received a response to the demand letter. Ex. A ¶ 18.

23.     Mr. Pipe gave Mr. Thayer a check payable from a Loveland Automotive Investments, Inc. account in the amount of $1827.50 to pay Mr. Thayer for his last trip. It was not paid upon presentment. Ex. B ¶ 17; Ex. 2 to Ex. B (Bounced Check).

24.     Through counsel, Mr. Thayer sent a letter to Mr. Pipe and Loveland Automotive Investments, Inc. pursuant to C.R.S. § 13-21-109 demanding that he be paid the amount of the check. Ex. B ¶ 18; Ex. 3 to Ex. B.

25.     Mr. Thayer received no response to the demand letter. Ex. B ¶ 19.

### III.  SUMMARY JUDGMENT STANDARD OF REVIEW

"[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery." F.R.C.P. 56(b). "Summary judgment is proper if the movant demonstrates that there is 'no genuine issue as to any material fact' and that it is 'entitled to a judgment as a matter of law.'" *Thom v. Bristol-Myers Squibb Co.*, 353 F. 3d 848, 851 (10th Cir.

2003) (quoting Fed.R.Civ.P. 56(c)). The movant bears the initial burden of establishing the prima facie absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). "If the movant carries this initial burden, the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (quoting Fed.R.Civ.P. 56(e)).

## IV.  ARGUMENT

The undisputed facts require that the Defendants be liable to the Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the Colorado Wage Act, C.R.S. 8-4-101 *et. seq.*, and the Colorado Dishonored Check Statute, C.R.S. § 13-21-109.

### A.  Individual Liability for Plaintiff Pipe and Joint and Several Liability for All Defendants

#### 1.  Individual Liability due to Undisclosed or Partially Disclosed Principal

It is unclear to the Plaintiffs whether they were employed by Defendant Pipe personally under Defendant Pipe's trade name, employed by one of Defendant Pipe's entities, or employed by some combination of the three Defendants. Ex. A ¶ 4; Ex. B ¶ 4. Obviously, if Defendant Pipe entered into the employment contracts individually, he is individually liable under the contracts. But even if Defendant Pipe was acting as an agent for one of his two Defendant entities, Defendant Pipe is still personally liable on the employment contracts under the undisclosed or partially disclosed principal doctrine.

According to the undisclosed principal doctrine, "an agent is liable on a contract entered on behalf of a principal if the principal is not fully disclosed." *Water, Waste & Land, Inc. v. Lanham,* 955 P. 2d 997, 1001 (Colo. 1998). Moreover, Colorado also recognizes the partially disclosed principal doctrine where the agent is personally liable under the contract if he does not disclose both the existence *and* the identity of the principal. *Id.* ("This somewhat counterintuitive

proposition—that an agent is liable even when the third party knows that the agent is acting on behalf of an unidentified principal—has been recognized as sound by the courts of this state, and it is a well-established rule under the common law.").

Here, it is undisputed that the Plaintiffs entered into an employment contract with one of the Defendants, and it if further undisputed that the Plaintiffs did not know which of the three they contracted with. *See* Ex. A ¶¶ 2-4; Ex. B ¶¶ 2-4; Ex. 1 to Ex. A (indicating escrows held by "Pipeline" (*i.e.,* Pipeline Auto Transport) and "LAI" (*i.e.,* Loveland Automotive Investments)); Ex. 1 to Ex. B (indicating the employer is Loveland Auto Transport); Ex. 2 to Ex. B (paycheck from Loveland Automotive Investments). It is therefore undisputed that either Defendant Pipe personally entered into the contracts, or he entered into the contracts as an agent for one or more undisclosed or partially disclosed principals. Regardless, Defendant Pipe is liable as if he personally entered into the contracts.

### 2.  *Piercing the Corporate Veils*

In his dealings with the Plaintiffs, it is undisputed that Defendant Pipe was either operating personally under his trade name or as agent for his entities: Defendants Loveland Automotive Investments, Inc and Pipeline Auto Transport, Inc. *See* Ex. A ¶¶ 2-4; Ex. B ¶ 2-4. By treating his trade name and his corporate entities interchangeably throughout the course of the contracts, the entities became Defendant Pipe's *alter egos* and all three should be joint and severally for any acts or omissions under the employment contracts.

Under Colorado law, the corporate veil can be pierced if (1) there is such a unity of interests between the entity and the shareholder that the entities are an alter ego of the shareholder; (2) "whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim"; and (3) "whether an equitable result will be

achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity." *In re Phillips*, 139 P. 3d 639, 644 (Colo. 2006).

Here, "there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist." *Id.* Both Plaintiffs were never clear who they worked for as they received pay checks and other documents separately indicating that each of the Defendants was their employer. *See* Ex. A ¶¶ 2-4; Ex. B ¶¶ 2-4; Ex. 1 to Ex. A (indicating escrows held by "Pipeline" (i.e., Pipeline Auto Transport) and "LAI" (i.e., Loveland Automotive Investments)); Ex. 1 to Ex. B (indicating the employer is Loveland Auto Transport); Ex. 2 to Ex. B (paycheck from Loveland Automotive Investments). Moreover, justice requires piercing and an equitable result will be achieved because Defendant Pipe should not be able to dodge liability by creating a confusing web of trade-names and entities and then constantly transmuting between his entities and his trade-name throughout the employment relationship with the Plaintiffs.

## B. **FLSA**

The FLSA requires "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at … $7.25 an hour." 29 U.S.C. § 206(a)[1]. "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). Any employer who violated FLSA's minimum wage

---

[1] The un-truncated version of 29 U.S.C. § 206 shows various minimum wages for various time periods. Since 2009, the minimum wage has been $7.25 per hour and all FLSA violations alleged here were well after that.

provisions is liable for unpaid minimum wage, liquidated damages equaling the unpaid minimum wage, and reasonable attorney's fees. 29 U.S.C. § 216(b).

The Plaintiffs were undisputedly covered by the FLSA's minimum wage requirements as their only duty for the Defendants under their employment contracts was the transport of automobiles across state lines. *See* 29 U.S.C. §§ 203(b), 206(a). Moreover, regardless of any common law theories of undisclosed principal and veil piercing, Defendant Pipe is individually liable for the Plaintiffs' FLSA damages because he was also their "employer" under the statute. An "employer" under the FLSA is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). Defendant Pipe undisputedly had the power to hire and fire the Plaintiffs, supervised their work schedules and conditions of employment, determined the rate and method of pay for the Plaintiffs, and maintained their employment records. Ex. A ¶ 7; Ex. B ¶ 7; *See Herman,* 172 F.3d at 139. Defendant Pipe is therefore liable for the Plaintiff's FLSA damages. *See Robertson*, 78 F. Supp. 2d at 1150.

It is undisputed that the Plaintiff Evans worked at least 100 hours for the Defendants with no compensation and Plaintiff Thayer worked at least 70 hours for the Defendants with no compensation. Ex. A ¶ 16; Ex. B ¶ 16; *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946) (Plaintiffs burden under FLSA not to show exact hours worked, but to show "reasonable inference" of hours worked).

Therefore, the Defendants are liable to the Plaintiffs as follows:

    i.  Unpaid minimum wage to Plaintiff Evans of $725 ($7.25 X 100 hours).
   ii.  Liquidated damages to Plaintiff Evans of $725.
  iii.  Unpaid minimum wage to Plaintiff Thayer of $507.50 ($7.25 X 70 hours).
  iv.  Liquidated damages to Plaintiff Thayer of $507.50.
   v.  Attorney's fees and costs pursuant to 29 U.S.C. § 216(b).

### C.  **Colorado Wage Act**

The Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, applies to "[a]n employer who fails to pay an employee the wages earned by him as of the time of his discharge …" *Lee v. Great Empire Broadcasting, Inc.*, 794 P.2d 1032, 1034 (Colo. App. 1989). Under C.R.S. § 8–4–109(1), "when an employer terminates an employment relationship, wages earned and unpaid at the time of the discharge are due and payable immediately." *Cusimano v. Metro Auto, Inc.*, 860 P.2d 532, 533 (Colo. App. 1992) (construing C.R.S. § 8-4-104 which is now located at C.R.S. § 8-4-109). Under C.R.S. § 8–4–109(3), "an employer who refuses without a good faith legal justification to pay wages when due under [C.R.S. § 8–4–109(1)] is liable to the employee for a penalty in addition to the compensation legally proven to be due." *Id.* at 533.

In order to be entitled to a penalty, an employee must "make a written demand for the payment within sixty days after the date of separation and shall state in the demand where such payment can be received."  C.R.S. § 8-4-109(3)(a).  If the wages owed the employee "are not mailed to the place of receipt specified in a demand for payment and postmarked within fourteen days after the receipt of such demand", the employer is additionally liable to the employee for a statutory penalty of 125% of the unpaid wages if the unpaid wages are less than $7500, and an additional statutory penalty of 50% of the unpaid wages if the withholding is willful. C.R.S. § 8-4-109(3)(b)-(4).

Here, the Defendants undisputedly owed the Plaintiffs wages at termination and as of the date of this motion the Plaintiffs have not been paid these wages. Ex. B ¶¶ 14-15; Ex. B ¶¶ 14-15; Ex. 1 to Ex. A; Ex. 1 to Ex. B. Defendant Pipe is individually liable for these wages because he was either individually an employer or an agent of an undisclosed or partially disclosed principal. These wages include both the unpaid trips at the end of the employment contract and the illegal "escrow" amounts withheld from every pay check to be used to pay for any damage

done by Plaintiffs to the cars they transported. C.R.S. § 8-4-105 (listing the few permitted payroll deductions); *see* Ex. B ¶¶ 14-15; Ex. B ¶¶ 14-15.  Plaintiff Evans sent a C.R.S. § 8-4-109(3)(a) demand letter within the applicable time and received no response. *See* Ex. A ¶¶ 17-18; Ex. 2 to Ex. A. Moreover, the withholding is willful, triggering the additional 50% penalty, because Defendant Pipe knew he withheld the final trip amounts and the "escrow" amounts under the apparent mistaken belief that he was legally withholding them. *See* Ex. 1 to Ex. A; Ex. 1 to Ex. B. Ignorance of the law is no defense; Defendant Pipe's knowledge of the illegal withholding, even if he mistakenly thought it was legal, is sufficient to show willfulness. Defendant Pipe is therefore liable to Plaintiff Evans for his unpaid wages, statutory penalties, attorney's fees, and pre-judgment interest. Defendant Pipe is therefore liable to Plaintiff Thayer for his unpaid wages, attorney's fees, prejudgment interest, and costs. *Giuffre v. Mary Lake Lodge*, 11-cv-00028-PAB-KLM at 12 (Dist. Colo. Feb. 25, 2013) (Plaintiff is not entitled to statutory damages, but is entitled to compensatory damages and attorney's fees, if did not send a demand) (attached as Ex. C). More specifically, the Defendants are joint and severally to the Plaintiffs as follows:

     i. Compensatory Damages to Plaintiff Evans of $7,248.75. Ex. A ¶ 15.
     ii. Statutory Damages to Plaintiff Evans of $12,685.31 (1.75 * $7,248.75).
     iii. Statutory Interest to Plaintiff Evans of $1997.92 (8% statutory interest from 3/6/13 to 6/2/14). *See* Ex. A ¶ 13 (employment ending no later than 3/6/13).
     iv. Compensatory Damages to Plaintiff Thayer of $4,627.50. Ex. B ¶ 16.
     v. Statutory Interest to Plaintiff Thayer of $737.11 (8% statutory interest from 7/1/12 to 6/2/14). *See* Ex. B ¶ 13 (employment ending June 2013).
     vi. Attorney's fees to both Plaintiffs pursuant to C.R.S. § 8-4-110.

**D.   The Dishonored Check Statute, C.R.S. § 13-21-109**

Pursuant to C.R.S. § 13-21-109, if a notice is sent to the maker of a check that is not paid upon presentment in accordance with the requirements of C.R.S. § 13-21-109(3)-(4) and the maker does not respond within 15 days with payment of the total amount due (C.R.S. § 13-21-

109(2)), the maker shall be liable for triple the face amount of the check and reasonable attorney's fees. C.R.S. § 13-21-109(2), (6).

Here, Plaintiff Thayer undisputedly was the holder of an $1827.50 check for which Defendant Loveland Automotive Investments, Inc. was the maker. Ex. B ¶¶ 17-19; Exs. 2 and 3 to Ex. B. This check undisputedly was not paid upon presentment and Loveland Automotive Investments, Inc. undisputedly did not respond to a C.R.S. § 13-21-109 bounced check notice within 15 days by paying Plaintiff Thayer any money. *Id.* As a result, Defendant Loveland Automotive Investments, Inc. and Defendant Pipe (as undisclosed principal or partially disclosed principal) and all Defendants (under a veil piercing theory) are jointly liable as follows:

    i. Compensatory Damages to Plaintiff Thayer of $1827.50. Ex. B ¶¶ 17-19; Exs. 2 and 3 to Ex. B.
    ii. Statutory Interest to Plaintiff Thayer for the compensatory damages of $291.10 (8% statutory interest from 7/1/12 to 6/2/14).
    iii. Statutory damages (2 * compensatory damages) of $3655.00.
    iv. Statutory Interest to Plaintiff Thayer for the statutory damages of $582.20 (8% statutory interest from 7/1/12 to 6/2/14).
    v. Attorney's fees pursuant to C.R.S. § 13-21-109(6).

## E.  Attorney's Fees

Under FLSA (29 U.S.C. § 216(b)), the Colorado Wage Act (C.R.S. § 8-4-110), and the Colorado Bounced Check Statute (C.R.S. § 13-21-109), the Plaintiffs are entitled to their attorney's fees from the Defendants. The Plaintiffs will move separately for attorney's fees upon a successful motion for summary judgment, but request that fees be granted pending that motion here.

## V.  AWARDING DAMAGES UNDER THE FLSA, THE COLORADO DISHONORED STATUTE, AND THE COLORADO WAGE ACT WOULD NOT CONSTITUTE DOUBLE RECOVERY AND THEREFORE SHOULD BE PERMITTED

It may appear at first glance that the Plaintiffs are seeking double recovery by requesting liquidated damages under the FLSA, and penalties under the Colorado Wage Act and Bounced

Check Statute.  But here the Plaintiffs only ask for the actual damages once, and are entitled to all of the statutory damages because the statutory wrongs constitute different acts separated by weeks, and the purposes of the statutory damages are distinct.  Both Plaintiffs claim compensatory liquidated damages under the Fair Labor Standards Act.  Plaintiff Evans also claims statutory penalties under the Colorado Wage Act. (Plaintiff Thayer did not know of the requirement to write a demand letter within 60 days of the end of employment.)  Plaintiff Thayer has a separate claim for statutory damages based on the dishonored paycheck.

There is of course a general distaste for double-recovery in federal courts when the claims "arise from the same operative facts, and seek identical relief." *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1259 (10th Cir.1988).  But in this case, while the Defendant's first statutory violation set the stage for the two others, each violation is based on a different wrongful act with unique elements and the relief sought is not the same.

**F.  Compensatory and Punitive Damages Are Awarded for the Same Wrong**

While the U.S. Supreme Court of late has occasionally reined in punitive damages awards that far outweigh the compensatory award, it is, as a general rule, necessary to award both for the same wrong when the statutes require. *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 US 408, 123 S Ct 1513, 155 L Ed 2d 585 (2003).  Since the FLSA's liquidated damages are compensatory and the two other statutes' statutory damages are punitive, the Plaintiffs can each collect on both.

**G.  FLSA Liquidated Damages are Compensatory**

The Supreme Court explained in the early years of the FLSA that "liquidated damages for failure to pay the minimum wages . . . are compensation, not a penalty or punishment." *Overnight Motor Co. v. Missel*, 316 U.S. 572 (1942).  The purpose of the damages is Congress's "recognition that failure to pay the statutory minimum on time may be so detrimental to

maintenance of the minimum standard of living "necessary for health, efficiency and general well-being of workers" and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being." *Brooklyn Savings Bank v. O'Neil*, 324 US 697, 707 (1945).

Because the award is meant to compensate for the lost use of money, it subsumes the usual right to prejudgment interest (which the Plaintiffs do not request here). *Doty v. Elias*, 733 F.2d 720, 726 (10th Cir.1984).  Under the FLSA, the damages attach the minute the payment becomes late, which is typically the normal pay day.  *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993).  Also under the FLSA, only minimum wage and overtime can be collected and not the full contractual unpaid wage, unlike the Colorado Wage Act.

The FLSA is not concerned about whether a worker is paid the full promised wages so long as the end result does not suppress the wages below a wage floor. As the Court explained in the above quote from Brooklyn Savings Bank, while there is obviously an individual justice element to the FLSA damages, the overall congressional intent of the damages is to preserve the wage floor so that wages do not spiral downward, which in the aggregate would compromise commerce. *Brooklyn Savings Bank v. O'Neil*, 324 US 697, 707 (1945).

Similarly, while the damages component of the FLSA overtime provision gives the individual worker the pay they deserve for the additional work, the economic purpose of the provision is "to spread work in order to reduce unemployment, to discourage (by increasing the cost to the employer) a degree of overtime that might impair workers' health or safety, and to increase the welfare of low-paid workers." *Yi v. Sterling Collision Centers., Inc.,* 480 F.3d 505, 510 (7th Cir. 2007).  Without the liquidated damages, employers could refuse to pay until faced

with a judgment, depriving the workers of the use of the money, and thereby undermining the

statutory purpose of creating a wage floor and additional employment.

## H.  <u>The Colorado Wage Act ("CWA") is Punitive</u>

Unlike the FLSA, the CWA by its very words seeks to punish employers.  The statute

requires payment upon termination of work and declares when and how that payment should be

made.  If it is not made than the employee can send a demand letter within 60 days of

termination stating where to send the payment.  If the payment is not postmarked within 14 days:

> . . . the employer shall be liable to the employee for the wages or
> compensation, and *a penalty* of the sum of the following amounts
> of wages or compensation due or, if greater, the employee's
> average daily earnings for each day, not to exceed ten days, until
> such payment or other settlement satisfactory to the employee is
> made:
>
> (I) One hundred twenty-five percent of that amount of such wages
> or compensation up to and including seven thousand five hundred
> dollars; and
>
> (II) Fifty percent of that amount of such wages or compensation
> that exceed seven thousand five hundred dollars.
>
> (c) If the employee can show that the employer's failure to pay is
> willful, the penalty required under paragraph (b) of this subsection
> (3) shall increase by fifty percent.  . . .

CRS 8-4-109(3) (emphasis added)

The purpose of this law is first to give the employer notice of where to send the money, and then

to punish the employer if that does not happen.  While the FLSA attaches the damages instantly

upon non-payment, the CWA penalties punish not the original non-payment, but the refusal at

least 14 days later to not pay upon demand.  The CWA was designed to end the violence in

Colorado mining sector at the end of the 19th century by giving workers legal recourse against

the fraud and abuse of corporations. *Leonard v. McMorris*, 63 P.3d 323, 337 (2003) (J.

Mullarkey, dissenting).  While no doubt the drafters intended the bill to create a just society with

better wages, the immediate goal was to punish the employer so that the worker would not take matters into his own hands. The goal is not just a wage floor as with the FLSA, but just compensation for the hours worked at the promised wage.

The statutes address two distinct acts and must both be enforced. Otherwise the FLSA will defang the state statute. If getting both were double recovery, then once the FLSA damages attach, the perpetrator would in fact be incentivized to not respond to the wage demand letter at least until it is clear that the Plaintiff hires an attorney. If an employer knows that the FLSA double damages are already sunk and will not increase if she refuses to respond to the state demand, then she has every incentive to ignore the demand and continue to use the Plaintiffs' money until the day of the judgment. Because FLSA bars pre-judgment interest, only upon judgment would interest start to accrue.  If, on the other hand, the employer recognizes that she is going to get hit with the full penalty under state law in fourteen days, she has a strong incentive, as the Colorado legislature intended, to pay the money.  *See Mathis v. Housing Auth. of Umatilla County*, 242 F. Supp. 2d 777, 788-90 (D. Or. 2002) (applying similar logic to Oregon's punitive wage statute).

## I.  <u>Dishonored Check Statute</u>

The dishonored check statute operates much like the Colorado Wage Act.  When a check is dishonored, the maker is immediately liable for the amount and any actual damages as defined by the U.C.C.  But instead of accepting those actual damages, the holder may elect to send a demand letter with strict statutory requirements demanding repayment within 15 days.  If payment is not made, "the person shall be liable to the holder or any assignee for collection for three times the face amount of the check but not less than one hundred dollars and, with regard to a paycheck, actual damages caused by the nonpayment, including associated late fees."  C.R.S. §

13-21-109.  At least for paychecks, the statute specifically allows for compensatory damages in addition to the penalty.

The Colorado Court of Appeals has confirmed that these statutory damages are penal in nature:  "… liability for the penalty arises once the maker fails to pay the holder the face amount of the check within fifteen days after the appropriate notice has been given."  *Singer v. Strauss*, 851 P.2d 256, 258 (Colo.Ct.App.1993).  The goal of the insufficient funds statute is to preserve the efficacy of the use of commercial paper as the underpinning of the financial system. *See Shreveport Production Credit Assn. v. Bank of Commerce*, 405 So.2d 842, 845 (La. 1981)("To meet the requirements and complexities of our present financial system, the negotiable instrument has emerged as the universal method of insuring the certainty of commercial transactions.")

In the present case, the action that triggered the penalty was not the failure to pay the Plaintiff on payday, nor the fact that he wrote a check with insufficient funds, but the refusal to remedy the situation after receiving a demand letter.  Again if these temporally separate acts do not deserve separate penalties, then the deterrent value of the statute is diminished.  And the result would be in the future that Plaintiffs would bring two separate actions and just allow for a setoff of the first award.

**J.  <u>All Three Are Different</u>**

Each claim was caused be a separate wrongful action of the defendant spread out over months.  While the background information overlaps, each cause of action contains very different elements.  The statutes address different societal concerns and effectuate different purposes.  Most significantly even if the elements and the actions were the same, both damages would be allowed because the FLSA is compensatory while the CWA and the check statute are punitive.

The Plaintiffs concede that they can only collect the actual wages once, and that that under *Doty v. Elias*, 733 F.2d supra, the FLSA liquidated damages subsume the prejudgment interest on the portion of the wages covered by the FLSA.

## VI.   SUMMARY OF DAMAGES

Given these principles, the Plaintiffs believe they are entitled to summary judgment against all Defendants joint and severally as follows:

### For Plaintiff Evans

   i.   Compensatory Damages under C.R.S. § 8-4-101 *et seq.* (Wage Act) of $7,248.75.
   ii.   Statutory Damages under C.R.S. § 8-4-109 of $12,685.31.
   iii.   Statutory Interest for C.R.S. § 8-4-109 damages of $1997.92.
   vi.   FLSA Liquidated damages of $725.
   vii.   Attorney's fees and costs pursuant to 29 U.S.C. § 216(b) and C.R.S. § 8-4-110.
   **viii.   TOTAL = $20,659.06 + Costs, Attorney's Fees, and Post Judgment Interest.**

### For Plaintiff Thayer

   i.   Compensatory Damages under C.R.S. § 8-4-101 *et seq.* (Wage Act) of $4,627.50.
   ii.   Statutory Interest for C.R.S. § 8-4-101 *et seq.* damages of $737.11.
   iii.   FLSA Liquidated damages of $507.50.
   iv.   Statutory damages under C.R.S. § 13-21-109 (bounced check) of $3655.00.
   v.   Statutory Interest for C.R.S. § 13-21-109 statutory damages of $582.20.
   vi.   Attorney's fees and costs pursuant to 29 U.S.C. § 216(b); C.R.S. § 8-4-110; and C.R.S. § 13-21-109(6).
   **vii.   TOTAL = $10,109.31 + Costs, Attorney's Fees, and Post Judgment Interest.**

WHEREFORE, the Plaintiff requests that summary judgment be entered against all Defendants as outlined above and that upon entry of the summary judgment the Plaintiffs be granted leave to request their attorney's fees as prevailing parties through a separate motion.

Respectfully Submitted,

s/Alexander Hood_____
Alexander Hood
Towards Justice
601 16th St., Suite C #207
Golden, CO 80401
Tel.: 720-239-2606
Fax: 303-957-2289

17

Email: alex@towardsjustice.org

Attorney for the Plaintiffs

**Certificate of Service**

I hereby certify that on 6/2/2014, I served a true and correct copy of the forgoing on the

individuals below pursuant to F.R.C.P. 5.

Loveland Automotive Investments, Inc;
John RICHARD Pipe D.B.A. Loveland Auto Transport; and
Pipeline Auto Transport, Inc.
3818 S. CR 5
Loveland, CO 80537

 s/ Alexander Hood
Alexander Hood